IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STACIE ANN SHAKIR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-1911 |
| | § | |
| JIM MURRAY AGENCY d/b/a | § | |
| Nationwide, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendant's Motion for Summary Judgment (Doc. 35) and Plaintiff's Motion to Deny Summary Judgment and Proceed to Jury Trial (Doc. 38). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED.**

## I.  Case Background

Plaintiff Stacie Ann Shakir filed this employment discrimination action against her former temporary employer, Jim Murray Agency ("Defendant"), alleging discrimination based on race, gender, and religion as well as retaliation and hostile work

---

[1]       This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 8.

environment under Title VII of the Civil Rights Act of 1964 ("Title VII")[2] and Chapter 21 of the Texas Labor Code.[3]

## A.   <u>Factual Background</u>

Plaintiff worked for Defendant as a Customer Service Representative ("CSR") from May 28, 2014, to June 12, 2014.[4] Plaintiff is an African-American female who claims to be both Jewish and Christian.[5] She claimed she was 94 percent Jewish, 65.6 percent African-American, 54.5 percent Asian, 89.4 percent Caucasian, and 74.8 percent Hispanic based on an explanation about genetic markers in a medical record.[6] Plaintiff was employed and paid by Express Employment Professionals ("Express"), a staffing company, which placed Plaintiff with Defendant and was paid a fee by Defendant for Plaintiff's services.[7] Jim Murray ("Murray") was

---

[2]   42 U.S.C. § 2000e-2000e-17.

[3]   Because these two statutes are functionally the same for purposes of Plaintiff's claims, the court will only refer to Title VII. See <u>Shackleford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 403 n. 2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and Title VII is identical.").

[4]   <u>See</u> Doc. 35, Ex. B to Def.'s Mot. For Summ. J., Dep. of Pl. pp. 43, 46.

[5]   <u>See</u> Doc. 35, Ex. C to Def.'s Mot. For Summ. J., Charge of Discrimination p. 1; Doc. 35, Ex. B to Def.'s Mot. For Summ. J., Dep. of Pl. pp. 31-34.

[6]   <u>See</u> Doc. 35, Ex. B to Def.'s Mot. For Summ. J., Dep. of Pl. pp. 34-35. Plaintiff was tested for cystic fibrosis and spinal muscular atrophy. Attached to the test results was a compilation of genetic markers for the detection rate of cystic fibrosis for African-American, Jewish, Asian, Caucasian, and Hispanic ethnicities at the listed percentages. Plaintiff believes these general genetic markers indicate she is 94 percent Jewish. <u>See</u> Doc. 35, Ex. B to Def.'s Mot. For Summ. J. p. 47-49

[7]   <u>See</u> <u>id.</u> p. 42.

the president of Defendant but Plaintiff was directly supervised by Betty Stewart ("Stewart") during her time of employment with Defendant.[8]

Plaintiff testified she did not experience discrimination in her first week of employment and that the first instance of discrimination was on June 5, 2014.[9] On this date, Plaintiff was assigned to do work as a CSR for Syed Zaidi ("Zaidi").[10] Plaintiff showed her co-workers a picture of herself with light shining on her and quoted <u>Matthew</u> 5:16, which states: "Let your light shine before all so that all can see and praise your Father in heaven."[11]

After showing her co-workers the picture, Zaidi approached Plaintiff and told her not to show pictures or discuss her "faith and powers" at work because he had received negative feedback from other co-workers.[12] Plaintiff also testified, in the same conversation, Zaidi told her he did believe she was of God and that he needed her to pray for him because he was in financial duress.[13] Plaintiff testified that she was not offended by this

---

[8]   See <u>id.</u> p. 43.

[9]   See <u>id.</u> p. 50.

[10]   See <u>id.</u> p. 53.

[11]   See <u>id.</u> p. 55.

[12]   See <u>id.</u> p. 53.

[13]   See <u>id.</u> p. 60.

conversation.[14]   Plaintiff   did   not   immediately   report   the
conversation to her supervisors.[15]

Also on June 5, 2014, Plaintiff testified that a co-worker
named David made a comment regarding someone's "top area" being
really big and made hand gestures stimulating large breasts along
with his comment.[16] Plaintiff testified, based on his hand gestures,
she believed he was referring to a woman.[17] When she heard the
comment, she gestured to David to be quiet, and he immediately
complied and never made any other comments of the same nature.[18]
Plaintiff never reported the comments to Stewart or any other
supervisor at the agency.[19]

During her employment with Defendant, Plaintiff began studying
to take an insurance licensing exam, a prerequisite to becoming an
account manager.[20] To prepare for the exam, Plaintiff regularly
borrowed a study guide during the day from one her of co-workers,
Binh Vu ("Vu"), and returned it at the end of the day.[21] Plaintiff
testified she had a feeling that some of her co-workers were

---

[14]     See id. p. 63.

[15]     See id. pp. 23-24.

[16]     See id. p. 70.

[17]     See id.

[18]     See id. pp. 71, 211.

[19]     See id. p. 73.

[20]     See id. p. 6.

[21]     See id.

jealous of her because of her potential to move up corporate ladder.[22]

On June 10, 2014, Plaintiff again asked Vu to borrow the study guide.[23] Plaintiff testified Vu did not have the book and thought Plaintiff still had it.[24] Plaintiff told Vu that Plaintiff did not have the book and the two of them searched both Plaintiff's desk and Vu's desk together.[25] Plaintiff testified another co-worker, Krupa Nayak ("Nayak"), also helped them search for the study guide.[26] At some point, Vu went to the bathroom, and Nayak and Plaintiff continued to search for the study guide.[27]

Later that day, Diane Saldivar ("Saldivar") and Nayak went to Stewart and accused Plaintiff of going through Vu's desk when Vu had gone to the bathroom.[28] Stewart called Plaintiff into Stewart's office to hear Plaintiff's explanation, and Plaintiff denied the accusations.[29] Plaintiff testified that she never looked in Vu's

---

[22]   See id. pp. 6-7.

[23]   See id. p. 7.

[24]   See id. p. 8.

[25]   See id.

[26]   See id.

[27]   See id. pp. 11-12.

[28]   See Doc. 38, Ex. 2 (unnumbered) to Pl.'s Mot. to Deny Summ. J., Dep. of Stewart pp. 20-21; Doc. 35, Ex. A to Def.'s Mot. For Summ. J., Decl. of Stewart pp. 1-2.

[29]   See Doc. 38, Ex. 2 (unnumbered) to Pl.'s Mot. to Deny Summ. J., Dep. of Stewart p. 21.

desk when Vu was not present.[30] After talking with Nayak, Saldivar, Vu, and Plaintiff, Stewart credited the accusations made by Nayak and Saldivar.[31] On June 12, 2014, Stewart recommended to Murray that Plaintiff's assignment with Defendant be terminated, to which Murray agreed.[32] Stewart terminated Plaintiff that same day.[33]

## B.  **Procedural Background**

On June 30, 2014, Plaintiff filed this lawsuit, alleging discrimination based on sex, race, and religion, as well as retaliation and hostile work environment.[34] Defendant filed the pending motion for summary judgment on February 12, 2015.[35] Plaintiff responded to Defendant's motion for summary judgement on February 26, 2015, and Defendant filed a reply in support of its motion for summary judgment on March 6, 2015.[36] Plaintiff filed a motion to deny summary judgment and proceed to trial on April 15, 2015.[37]

---

[30]   See Doc. 35, Ex. B to Def.'s Mot. For Summ. J., Dep. of Pl. pp. 11, 15.

[31]   See Doc. 37, Ex. A to Def.'s Reply in Supp. of Mot. For Summ. J., Dep. of Stewart pp. 48, 52; Doc. 35, Ex. A to Def.'s Mot. For Summ. J., Decl. of Stewart p. 2.

[32]   See Doc. 35, Ex. A to Def.'s Mot. For Summ. J., Decl. of Stewart p. 2.

[33]   See id.

[34]   See Doc. 1, Pl.'s Orig. Comp.

[35]   See Doc. 35, Def.'s Mot. For Summ. J.

[36]   See Doc. 36, Pl.'s Resp. to Def.'s Mot. For Summ. J.; Doc. 37, Def.'s Reply in Supp. of Mot. For Summ. J.

[37]   See Doc. 38, Pl.'s Mot. to Deny Summ. J. & Proceed to Jury Trial.

## II.  Legal Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013) (quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine material factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case for which the nonmovant bears the burden of

proof. <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Exxon Corp. v. Oxxford</u>
<u>Clothes, Inc.</u>, 109 F.3d 1070, 1074 (5th Cir. 1997).

If the moving party carries its burden, the nonmovant may not
rest on allegations or denials in her pleadings but must respond
with evidence showing a genuine factual dispute. <u>Stauffer</u>, 741 F.3d
at 581 (citing <u>Hathaway v. Bazany</u>, 507 F.3d 312, 319 (5th Cir.
2007)).   Conclusory   allegations,   unsubstantiated   assertions,
improbable inferences, unsupported speculation, or only a scintilla
of evidence will not carry this burden. <u>Brown v. City of Houston,</u>
<u>Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).

When considering evidence, "[d]oubts are to be resolved in
favor of the nonmoving party, and any reasonable inferences are to
be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246
F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co.</u>
<u>v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002). The court
should not "weigh evidence, assess credibility, or determine the
most reasonable inference to be drawn from the evidence." <u>Honore v.</u>
<u>Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

If the evidence would not allow a reasonable jury to decide
the dispute in favor of the nonmovant, the dispute is not genuine.
<u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (citing <u>Matsushita</u>
<u>Elec. Indus. Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87
(1986)).   The court must grant summary judgment if, after an
adequate period of discovery, the nonmovant fails "to make a

8

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. Analysis

Defendant moves for summary judgment on all of Plaintiff's causes of action: (1) discrimination based on race, gender, and religion; (2) retaliation; and (3) hostile work environment.

### A.   Discrimination

Plaintiff alleges that Defendant discriminated against her in violation of Title VII on the basis of race, sex, and religion. Defendant argues Plaintiff did not completely exhaust her administrative remedies and therefore cannot bring a claim of discrimination based on Judaism. Defendant also argues Plaintiff cannot establish a prima facie case of discrimination based on race, sex, or Christianity.

### 1.   Discrimination Based on Judaism

Title VII requires employees to exhaust their administrative remedies by filing a discrimination charge with the EEOC and only after these administrative remedies have been exhausted may the employee seek judicial relief. McClain v. Lufkin Indus., Inc., 519 F.3d 264, 273 (5th Cir. 2008) (citing Pacheo v. Mineta, 448 F.3d 783, 788 (5th Cir. 2006)). A primary purpose of Title VII is to create EEOC investigations in an effort to achieve non-judicial resolutions of employment discrimination claims. Pacheo, 519 F.3d

9

at 788-89 (quoting <u>Sanchez v. Standard Brands, Inc.</u>, 431 F.2d 455, 466 (5th Cir. 1970)).  In furtherance of that purpose, the administrative charge must trigger an EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." <u>Id.</u> at 789 (quoting <u>Sanchez</u>, 431 F.2d at 466).

Plaintiff, on her charge of discrimination to the EEOC, never listed discrimination on the basis of Judaism.[38]  Plaintiff identified discrimination on the basis of religion and asserted her religion as Christianity.[39]  Because the EEOC could not have reasonably been expected to investigate discrimination based on Judaism, Plaintiff has not exhausted her administrative remedies and cannot seek judicial relief on this claim.  Accordingly, the court recommends summary judgment be granted in favor of Defendant on Plaintiff's discrimination claim based on Judaism.

**2.  Discrimination Based on Race, Gender, and Christianity**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  In the absence of direct evidence, as is the case here, courts analyze discrimination claims under the burden-shifting approach

_____

[38]   <u>See</u> Doc. 35, Ex. C to Def.'s Mot. For Summ. J., Charge of Discrimination p. 1.

[39]   <u>See</u> <u>id.</u>

first articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792
(1973) and modified in <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90
(2003). Under this "modified <u>McDonnell Douglas</u> approach," a
plaintiff may trigger a presumption of discrimination by
establishing a prima facie case. <u>Rachid v. Jack In The Box, Inc.</u>,
376 F.3d 305, 312 (5th Cir. 2004). Once a plaintiff has established
a prima facie case, the burden shifts to the defendant to proffer
legitimate, non-discriminatory reasons for its actions. <u>Id.</u>

A prima facie case of discrimination requires the plaintiff to
show that she: (1) is a member of a protected class; (2) was
qualified for her position; (3) suffered an adverse employment
action; and (4) was replaced by someone who is not a member of the
protected class to which the plaintiff belongs or was treated less
favorably than similarly situated employees of a different class.
<u>See</u> <u>Okeye v. Univ. of Tex. Houston Health Sci. Ctr.</u>, 245 F.3d 507,
512-13 (5th Cir. 2011). In the Fifth Circuit, "[a]dverse employment
actions include only ultimate employment decisions such as hiring,
granting leave, discharging, promoting, or compensating." <u>McCoy v.</u>
<u>City of Shreveport</u>, 492 F.3d 551, 559 (5th Cir. 2007).

It is undisputed Plaintiff is a member of a protected class,
was qualified for her position, and suffered an adverse employment
action. Defendant asserts Plaintiff cannot meet the fourth element,
that she was replaced by someone who is not a member of the
protected class to which the plaintiff belongs or was treated less

favorably than similarly situated employees of a different class. Since Plaintiff cannot bring suit based on Judaism, for purposes of a prima facie discrimination claim, Plaintiff's claimed protected classes are gender (female), race (African-American), and religion (Christianity). Defendant asserts Plaintiff was replaced by an African-American female who is Christian.[40] Plaintiff did not offer any evidence to rebut Defendant's assertion. Similarly, Plaintiff does not offer any evidence to show that she was treated less favorably than a similarly situated employee who was male, non-African American, or non-Christian. Because Plaintiff cannot prove the fourth element of a prima facie case for discrimination, the court recommends summary judgment be granted in favor of Defendant on Plaintiff's discrimination claim on the basis of race, sex, and religion.

## B. **Retaliation**

Plaintiff alleges that she was fired in retaliation for reporting that Zaidi instructed her not to show pictures or discuss her faith at work. Defendant argues Plaintiff cannot make a prima facie retaliation case.

Title VII's anti-retaliation clause forbids an employer from acting in a way that discriminates against an employee because she has participated in a Title VII proceeding or has opposed a

---

[40]    See Doc. 35, Ex. A to Def.'s Mot. For Summ. J., Decl. of Stewart p. 2.

12

discriminatory practice. 42 U.S.C. § 2000e-3(a); <u>Crawford v. Metro.</u>
<u>Gov't of Nashville & Davidson Cnty., Tenn.</u>, 555 U.S. 271, 279
(2009).

A plaintiff seeking to recover on a Title VII retaliation
claim must establish a prima facie case by showing that (1) she
engaged in a protected activity; (2) an adverse employment action
occurred; and (3) a causal link existed between the protected
activity and the adverse action. <u>Royal v. CCC & R Tres Arboles,</u>
<u>L.L.C.</u>, 736 F.3d 396, 400 (5th Cir. 2013). A plaintiff has engaged
in a protected activity if she "made a charge, testified, assisted,
or participated in any manner in an investigation, proceeding, or
hearing under Title VII" or "opposed any practice made an unlawful
employment practice by Title VII." <u>Grimes v. Tex. Dep't of Mental</u>
<u>Health & Mental Retardation</u>, 102 F.3d 137, 140 (5th Cir. 1996)
(quoting 42 U.S.C. § 2000e-3)(internal quotation marks omitted). If
a plaintiff establishes a prima facie case, an inference of
retaliation is raised, and the burden shifts to the defendant to
proffer a legitimate, non-retaliatory reason for its actions. <u>See</u>
<u>Feist v. State of La.</u>, 730 F.3d 450, 454 (5th Cir. 2013).

Here, Plaintiff alleged she was fired in retaliation for
complaining to Stewart about Zaidi's comments regarding her
discussing her faith at work. When she was called to Stewart's
office on June 10, 2014, to discuss the allegation that she had
opened a co-worker's desk, Plaintiff informed Stewart of Zaidi's

13

June 5, 2014 comments directing her to refrain from showing pictures or discussing her faith.[41] For the purposes of this motion, the court assumes, without deciding, that alerting Stewart to Zaidi's comments was protected activity. In response to this conversation, Stewart told Plaintiff not to worry about the issue and that Zaidi did not have any power to make decisions regarding employment.[42] Plaintiff testified she left the meeting feeling confident that the incident would not affect her employment.[43]

On June 12, 2014, when Plaintiff was terminated, the conversation between Zaidi and Plaintiff was never revisted.[44] Stewart told Plaintiff she was terminated primarily for the incident involving Vu's desk but also for another incident where Plaintiff did not complete an assignment on time.[45]

Granted, Plaintiff's termination on June 12, 2014, was close in time to the occasion of Zaidi's comments about her faith on June 5, 2014; however, "temporal proximity alone is insufficient to prove but for causation." Strong v. University Healthcare System, L.L.C., 482 F.3d 802, 808 (5th Cir. 2007) (citing Shirley v.

---

[41]   See Doc. 35, Ex. B to Def.'s Mot. For Summ. J., Dep. of Pl. pp. 22-24.

[42]   See Doc. 35, Ex. B to Def.'s Mot. For Summ. J., Dep. of Pl. pp. 23-24.

[43]   See id.

[44]   See Doc. 38, Ex. 2 (unnumbered) to Pl.'s Mot. to Deny Summ. J., Dep. of Stewart p. 25.

[45]   See id. pp. 5-6, 25-26.

14

<u>Chrysler First, Inc.</u>, 970 F.2d 39, 43 (5th Cir. 1992)).  Here, Plaintiff's only fact in support of a claim for retaliation is temporal proximity.

Because Plaintiff fails to provide sufficient evidence of a casual connection, the court recommends summary judgment be granted in favor of Defendant on Plaintiff's retaliation claim.  If Plaintiff has additional evidence, the court will consider such evidence submitted along with Plaintiff's objections.

## C. **Hostile Work Environment**

Plaintiff argues she was subject to hostile work environment based on her interpretation of a comment made by a co-worker. Defendant argues Plaintiff cannot establish the necessary elements of a hostile work environment claim under Title VII because she cannot show she was subject to severe or pervasive harassment.

In order to prevail on a hostile work environment claim, a plaintiff must show (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. <u>Hernandez v. Yellow Transp., Inc.</u>, 670 F.3d 644, 651 (5th Cir. 2012).  In addition, the complained-of conduct must be "so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the work place." <u>Hockman v.</u>

15

Westward Commc'ns, LLC, 407 F.3d 317, 326 (5th Cir. 2004) (quoting Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 874 (5th Cir. 1999)).

In determining whether a work environment is "hostile," the court must look to all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Jones v. La. Dep't of Health & Hosps., 471 F. App'x 344, 348-49 (5th Cir. 2012) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1991)). The harassment must be severe or pervasive enough to "alter the conditions of employment and create an abusive working environment." Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 328 (5th Cir. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002)). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." Harris, 510 U.S. at 21.

Discourtesy, rudeness, teasing, offhand comments, and isolated incidents (unless extremely severe) do not amount to "discriminatory changes in the terms and conditions of employment." Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999)(quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788

(1998)). The conduct complained of must be both objectively and subjectively offensive. <u>Stewart</u>, 586 F.3d at 330; <u>Hockman</u>, F.3d at 325.

Defendant alleges Plaintiff does not have the necessary evidence to show severe or pervasive harassment. Plaintiff herself admitted she never heard anyone at the agency making racial slurs or derogatory comments about African-Americans.[46] She also admitted she never heard anyone at the agency make slurs or derogatory comments about Christians.[47] Rather, Plaintiff focuses her hostile work environment claim on her status as a female.

Plaintiff alleges the hostile work environment was created from the June 5, 2014 incident when co-worker made a comment regarding a "top area". Plaintiff felt these comments were about a woman because of the accompanying hand gestures. This is the only incident Plaintiff provides in support of her contention that she was subjected to a hostile work environment. Plaintiff further admitted this is the only time she heard anyone at the agency make derogatory comments about females.[48] A hostile work environment is one in which the abuse is continuous, not simply episodic. <u>See</u> <u>Faragher</u>, 524 U.S. at 787 n. 1. Title VII is not a "general civility code;" therefore, "sporadic use of abusive language" is

---

[46] <u>See</u> Doc. 35, Ex. B to Def.'s Mot. For Summ. J., Dep. of Pl. p. 210.

[47] <u>See</u> <u>id.</u>

[48] <u>See</u> <u>id.</u> p. 211.

outside of its purview. <u>Id.</u> at 788. A single isolated instance is not enough to rise to the level of severe or pervasive harassment.

Further, to be severe or pervasive, the alleged harassment must destroy Plaintiff's opportunity to succeed in the work place. Plaintiff again admitted that the comment did not interfere with her ability to do her job.[49] She testified she told David to be quiet when he made the comment because she was on the phone and that he immediately complied.[50] She did not testify that the comment offended her or interfered with her ability to finish her work in any way. Because Plaintiff cannot provide sufficient evidence to raise a fact issue that she was subjected to severe or pervasive harassment that affected a term, condition, or privilege of employment, the court recommends summary judgment be granted in favor of Defendant on Plaintiff's hostile work environment claim.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period

---

[49]   <u>See id.</u> p. 75.

[50]   <u>See id.</u>

18

mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 11<u>th</u> day of August, 2015.

_____
U.S. MAGISTRATE JUDGE

19